[No. 37632-2-I. Division One. September 22, 1997.]

C.J.C., *Appellant*, v. CORPORATION OF THE CATHOLIC BISHOP OF YAKIMA, ET AL., *Respondents.*

*Mary K. Fleck* and *James S. Rogers* of *Law Offices of James S. Rogers*; and *Frederic Fancher*, for appellant.

*M. Colleen Kinerk* and *Neil A. Cable* of *Cable, Langenbach, Henry & Kinerk*; *Thomas D. Frey* and *Stephen P. Larson* of *Stafford Frey Cooper*; and *David H. Smith* of *Williams, Kastner & Gibbs, L.L.P.*, for respondents.

*Andrew Subin, Michael A. Patterson, Patricia K. Buchanan, Stewart A. Estes, Debra L. Stephens, Bryan P. Harnetiaux*, and *Gary N. Bloom*, amici curiae.

WEBSTER, J. — This case concerns the childhood sexual abuse statute of limitations. CJC alleges that two Catholic priests fondled his genitals in 1980 and 1981 when he was fifteen to sixteen years old. When CJC sued the priests and the Diocese in 1994, the court dismissed the lawsuit as barred by the statute of limitations, and made other rulings that CJC also appeals. The child abuse limitations statute applies to acts that were sex crimes at the time they were perpetrated. Victims must file suit within three years of discovering that the abuse caused injury. In this case, a jury could find that the acts constituted the sex crime of communication with a minor for an immoral purpose. Moreover, CJC testified that until 1994, he did not discover that the priests' acts caused the mental

distress for which he now seeks recovery. Consequently, we reverse the trial court's dismissal of CJC's lawsuit.

## FACTS

CJC was raised in the Catholic faith and participated at church as an altar boy. Fathers Richard Scully and Dale Calhoun were priests at his parish, although not particularly close to each other. At different times, they supervised CJC's altar boy training, came to his family's house for dinner, and took him on outings such as dinner, movies, and also trips to Seattle and southern California.

In this action, CJC alleges that Father Scully massaged his neck and back on two occasions, his buttocks on one occasion, and his penis on one occasion. He alleges that Father Calhoun fondled his penis on one occasion, during which CJC ejaculated. All five occasions occurred while CJC was fifteen to sixteen years old, during 1980 and 1981. He soon began having regular nightmares, which he continues to have, replaying the sexual contact.

In March 1993, CJC's girlfriend (now wife) suggested that his "drug problem" might be related to the abuse. Two months later, CJC talked to the mother of a boy to whom Father Calhoun had allegedly made sexual advances. At her suggestion, CJC started counseling. As a result of that counseling, he now identifies several areas of mental distress that he attributes to the priests' conduct: promiscuity, inability to form trusting relationships, sexual identity issues (i.e. fear of being a homosexual), and a single instance when he contemplated suicide.[1]

In March 1994, CJC sued Father Calhoun, Father Scully, and the Corporation of the Catholic Bishop of Yakima. He alleged that the Bishop of Yakima (Diocese) knew or should have known of the priests' inappropriate sexual tendencies, and negligently failed to supervise or

---

[1]CP 589, 544-45.

negligently retained them. Further, he alleged that Scully and Calhoun breached their duty as his priest by sexually abusing him, for which they were personally, and the diocese was vicariously, liable. Scully admits to an act of sexual child abuse in 1981 with a 15-year-old boy, but denies CJC's allegations. The diocese acknowledges that Scully told it of a 1981 incident in which he fondled a person. Calhoun denies any sexual abuse of CJC, but exercised his Fifth Amendment right against self-incrimination when asked whether he has had sexual contact with anyone else. The trial court dismissed CJC's claims as barred by the statute of limitations.

## DECISION

### *Childhood Sexual Abuse Statute of Limitations*

■ CJC argues that the priests' conduct triggered the childhood sexual abuse statute of limitations:

> All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>
> . . . .
>
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.[2]

The statute utilizes the criminal code's categorization of sexual offenses when defining "childhood sexual abuse:"

> As used in this section, "childhood sexual abuse" means any act committed by the defendant against a complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 9A.44 RCW

[2]RCW 4.16.340(1)(c).

or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed.[3]

Preliminary, we must decide which criminal statutes the childhood sexual abuse limitation statute utilizes. One amicus argues that "childhood sexual abuse" includes violations of the *current* version of RCW 9A.44. This interpretation contradicts the statute's plain language, which references acts that "*would have been* a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect *at the time the act was committed.*" The childhood sexual abuse limitation statute applies only if Scully or Calhoun committed an act that violated a sex crime statute effective in 1980 or 1981, and CJC filed within three years of discovering that their acts caused his injury.

## A. *Assault.*

 CJC alleges that the priests assaulted him. Even if true, assault is not a crime codified within RCW 9A.44 or 9.68A.040. Neither is it a prior law of similar effect.[4] Hence, assault is not a childhood sexual abuse.

## B. *Indecent Liberties.*

CJC also argues that the priests committed the crime of indecent liberties.[5] In addition to the element of sexual contact, however, the 1981 statute required that the victim must have been forcibly compulsed, younger than 14 years old, or "incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless."[6] Because CJC was over 14, and he did not introduce any evidence supporting either compulsion or

---

[3]RCW 4.16.340(5).

[4]RCW 4.16.340(5).

[5]Former RCW 9A.44.100.

[6]Former RCW 9A.44.100(1)(c).

incapacity, the trial court properly held that the alleged acts did not violate the indecent liberties statute in effect in 1981.

### C. *Communication With A Child For An Immoral Purpose.*

■ CJC argues that the priests communicated with him for an immoral purpose.[7] The defendants respond that a person who communicates for only immoral, as opposed to illegal, purposes is not guilty of communication with a minor for immoral purposes.[8] Our supreme court rejected this argument in *State v. McNallie.*[9] In that case, the court approved a "to convict" instruction that did not require the conduct to be illegal under existing law; the instruction required the prosecution to prove only that the defendant communicated "for immoral purposes of a sexual nature."[10] In so doing, *McNallie* overruled *State v. Danforth,*[11] which held that individual sections of the Sexual Exploitation chapter defined "immoral purposes."[12] The *McNallie* court explained that the statute criminalizes communication with minors "for the predatory purpose of promoting their exposure to and involvement in sexual misconduct."[13] Thus, under *McNallie*, the jury could find that an act not specifically proscribed by another criminal statute constitutes communication with a minor for immoral purposes.[14] Such an act, because it would violate RCW 9A.44, would be "childhood sexual abuse" within the childhood sexual abuse limitation statute.

---

[7]Former RCW 9A.44.110 (1981) ("Any person who communicates with a child under the age of seventeen years of age for immoral purposes shall be guilty of a gross misdemeanor. . .").

[8]*State v. Luther*, 65 Wn. App. 424, 428, 830 P.2d 674 (1992).

[9]120 Wn.2d 925, 846 P.2d 1358 (1993).

[10]WPIC 47.06; *McNallie*, 120 Wn.2d at 929.

[11]56 Wn. App. 133, 136, 782 P.2d 1091 (1989).

[12]120 Wn.2d at 933.

[13]*McNallie*, 120 Wn.2d at 933.

[14]120 Wn.2d at 933.

Applying this standard, we hold that CJC's allegations raise an issue of material fact. A reasonable juror could find that Fathers Calhoun and Scully communicated with CJC for immoral purposes of a sexual nature and that the priests' position of authority and trust vis-à-vis CJC made such conduct predatory in nature. CJC testified that initially he was unable to connect the abuse to his current injuries.[15] What is more, CJC presented expert testimony: a psychotherapy professor, who had been treating CJC twice monthly for six months, concluded that CJC did not link the abuse to his mental distress before April 1994.[16] The trial court erred by granting summary judgment because the jury could find that CJC suffered childhood sexual abuse, and that he filed within three years of discovering that the abuse caused his emotional injuries.[17]

We affirm in part, reverse in part, and remand for further proceedings.

The remainder of this opinion will not be published because it addresses assignments of error which have no precedential value. It will be filed for public record in accordance with the rules governing unpublished opinions.[18]

AGID and Cox, JJ., concur.

Review granted at 135 Wn.2d 1001 (1998).

---

[15]CP 69.

[16]CP 545; *J.N. v. Bellingham Sch. Dist. No. 501*, 74 Wn. App. 49, 61, 871 P.2d 1106 (1994) (admissible expert opinion on ultimate issue is sufficient to preclude summary judgment).

[17]RCW 4.16.340(1)(c); *Oostra v. Holstine*, 86 Wn. App. 536, 937 P.2d 195, 198 (1997).

[18]RCW 2.06.040.