[No. 20143-7-II.   Division Two.   January 30, 1998.]

E.R.B., ET AL., *Appellants*, v. CHURCH OF GOD, ET AL., *Respondents*.

*Thomas J. West* and *Martin Burns* of *Thompson, Krilich, LaPorte, Tucci & West*, for appellants.

*Stewart A. Estes* of *Keating, Bucklin & McCormack, P.S.*; *Sandra B. Bobrick* of *Sloan, Bobrick & Oldfield, Inc., P.S.*; *Sheryl D.J. Willert* and *Mary H. Spillane* of *Williams Kastner & Gibbs*; and *Robert C. Dickerson II* and *David M. Jacobi* of *Wilson, Smith, Cochran & Dickerson*, for respondents.

HUNT, J. — John and Jody Bales appeal summary judgment dismissal of their lawsuits against: Rick Shaw, a minister at the Baleses' local church; the New Life Fellowship Church of God (Local Church); and the Pacific Northwest Church of God State Office and Parsonage (State Office). They claim Shaw sexually molested their teenage son E.R.B. from 1985 to 1989, and that the Local Church and State Office had negligently hired, supervised, and/or investigated Shaw. E.R.B. also appeals dismissal of his claims against the Local Church and the State Office.

The trial court dismissed these claims as barred by the applicable statute of limitations, RCW 4.16.080(2). We affirm.

## FACTS

### A. The Church

The Local Church hired Shaw to work as a minister in April 1985. The Baleses had been members of the Local Church and had attended the church regularly since 1980. The Local Church is controlled and supervised by the State Office.

By the summer of 1985, the Bales family had become close friends with Shaw. In 1986, Shaw helped Jody Bales obtain a job as church secretary, where she worked until April 1993. Shaw left the Local Church in May 1990.

### B. E.R.B.

E.R.B. alleges that Shaw began to abuse him sexually on a camping trip in the summer of 1985, when E.R.B. was 14 years old. E.R.B. claims that he awoke in his tent to discover Shaw fondling his (E.R.B.'s) penis, stimulating him until he reached orgasm. E.R.B. testified that at the

time, he felt "humiliated, embarrassed, scared." After the first incident, E.R.B. began having recurring nightmares about the sexual abuse, but he did not tell anyone.

The sexual abuse continued regularly for the next four years. On one occasion, Shaw came to E.R.B.'s home while E.R.B. was outside tanning. Shaw rubbed oil on E.R.B. and eventually brought him to orgasm. When they were supposed to be at a church function, Shaw took E.R.B. to a hotel room, where he molested E.R.B. The abuse also occurred in the Shaws' home, at the church, and in automobiles.

During those four years, E.R.B. believed that the sexual abuse was wrong and that it was causing him harm, but he was unable to stop the abuse. On at least one occasion, when Shaw tried to abuse E.R.B. in a Portland motel, E.R.B. told Shaw to stop because "it was killing me."

E.R.B. testified that during the period of sexual abuse, he made three suicide attempts. The first attempt occurred when Shaw began to molest E.R.B. while E.R.B. was driving a car. E.R.B. accelerated and drove the car into a tree to stop the emotional pain caused by Shaw's abuse. The next attempt occurred when E.R.B. was driving his father's truck. E.R.B. took a sharp turn at 85 miles per hour in an effort to kill himself. E.R.B.'s final suicide attempt apparently occurred sometime in 1989. On this occasion he attempted suicide to "[f]ind a way out" of "[t]he pain caused by Rick's sexual abuse."

E.R.B. did not tell his parents that Shaw was abusing him until July 1993. He was reluctant to tell his parents because he felt scared and humiliated and because Shaw had told him not to tell anyone. E.R.B. explained that:

> One time during one of the youth camps . . . Rick pulled me aside and said that people were asking questions and investigating and I couldn't tell anybody. He reminded me of what would happen if I did, that Donna would leave him and I would be the cause of it because I said something. He would lose his kids. He would lose his job. My mom would lose her job.

Although E.R.B. did not specifically disclose Shaw's mo-

lestation to his parents until July 1993, he did talk about the abuse before that date. Specifically, E.R.B. told at least five people that he had been sexually abused: (1) his friend Greg Harrison, in 1989; (2) his friend Jesse Stockard, in 1990; (3) Donna Shaw (Rick Shaw's wife), sometime between 1985 and 1989;[1] (4) Gary Cowles, in 1992; and (5) Bruce Greene, sometime before July 1993.

Without naming Shaw as the perpetrator, E.R.B. did tell his parents before 1993 that he had suffered some form of sexual abuse. Specifically, in 1988 E.R.B. told his parents that he had been gang-raped in a restroom at Montgomery Ward. E.R.B. later admitted that he had lied about this incident. Nevertheless, his parents became increasingly concerned that their son was being sexually abused.

The last incident of sexual abuse occurred sometime before June 1989, when E.R.B. graduated from high school. E.R.B. turned 18 on February 14, 1989.

## C. John and Jody Bales

E.R.B.'s parents, John and Jody Bales, voiced concerns about Shaw's behavior as early as 1985, when John Bales reported to Pastor Vaughn Matthews that Shaw "had strip[ped] down to the nude and took a bath in the creek" in front of some boys in the church. Jody Bales also complained that she "didn't want E.R.B. and Rick hugging." In 1988, Jody Bales told her counselor, Mary Stone, that "[t]he fact that he [Shaw] was involved with my son was causing me stress. The fact that my pastor wouldn't do anything about it was causing me stress."

By the time E.R.B. told his parents the story about being raped in Montgomery Ward, they were convinced that E.R.B. had been sexually molested by someone. The Baleses suspected that person was Shaw. In her deposition, Mrs. Bales was asked whether she had confronted E.R.B. about her suspicions:

---

[1]E.R.B. told Donna that he was being sexually abused by someone who had been a member of the Local Church.

Q  You suspected in your hearts that your son, [E.R.B.], was being molested by Rick; right?

A  We suspected it.

. . . .

Q  This came up when Joe [E.R.B.'s brother] was here and [E.R.B.] told the lie about being raped by five men at Montgomery Ward's in a bathroom; right?

A  Yes

Q  Did you ever ask your son whether or not he was being molested:

A  I didn't have to ask him.

Q  Because you could read his mind?

A  No.

Q  Why didn't you have to ask him?

A  Just didn't

. . . .

Q  Why didn't you need to ask [E.R.B.]? You said I didn't need to ask [E.R.B.]. Why didn't you need to ask [E.R.B.] whether or not he was being molested?

A  He said it in so many words already.

On July 12, 1990, John and Jody Bales made a formal complaint to the Local Church, insisting that the church investigate Shaw. To support their complaint, the Baleses submitted a letter and incident report ("Incident Report"), alleging several specific incidents of misconduct by Shaw. The Incident Report states in pertinent part:

> Finally the pressure got to be more than [E.R.B.] could handle so he came up with a rape story. We all knew the story was ex-agerated [sic] but the bottom line was the fact that something such as molestation or rape has happened to [E.R.B.]. The night before this story came out [E.R.B.] had planned another attempt at suicide but his brother Joe was able to stop him. It was after this attempt that we decided to confront Rick.

[E.R.B.] also talked to a friend about an incident of being in the back yard sun tanning when a guy [laid] down with him and started rubbing oil on his back, then down his legs and moved to the front where when he was through he had to go wash himself. The word got back to us that the guy was Rick.

We went to Vaughn again but he said without proof we couldn't do anything. (meaning [E.R.B.] had to come forward) That's when he set up a meeting for us & Rick to get together. The meeting was scheduled for Tuesday but things blew to the point that Vaughn called the meeting Monday. When Rick found out about the meeting and the sun incident he called [E.R.B.] and anyone else that he thought was involved to have a separate meeting of his own. When we confronted Rick he sat with his head down and Donna did most of the talking denying everything that we said or making excuses for Rick's actions. We left there feeling we had accomplished nothing. Rick spoke very little and never once tried to defend himself or deny any accusations that were made against him. I found his reaction to be somewhat abnormal. During this time we were told that the one accident [E.R.B.] had in his Dad's truck was a suicide attempt [and] Rick had counseled [E.R.B.] about that. We were never told or consulted with. This would make three attempts.

In response to the Baleses' letter, the Local Church Board of Inquiry convened on August 26 and 27, 1990, and took written and oral testimony from a number of witnesses, including John and Jody Bales. Because of concerns related to his previous suicide attempts, the Baleses did not tell E.R.B. about the hearing nor did they ask him to testify. Since E.R.B. did not come forward at the hearing, the Local Church took no action against Shaw.

### D. Dr. McGovern

Dr. Kevin McGovern is a clinical psychologist with expertise in evaluating homosexual abuse. He analyzed the impact of the sexual abuse on E.R.B. Dr. McGovern testified:

It is my opinion that [E.R.B.] could not and did not appreci-

ate the nature and extent of the injury he sustained as a result of the sexual abuse. It is also my opinion that he was probably unaware that he sustained any injury at all if only because components of the sexual events may have been pleasurable and caused a great deal of cognitive and emotional confusion. Therefore he could not associate "injury" to such an event. There is no indication that [E.R.B.] knew of immediate and lasting effects that sexual abuse had upon him.

Dr. McGovern also testified that it was not until July 1993 that E.R.B. realized the extent and causation of the emotional injuries that resulted from Shaw's sexual abuse.

## E.   Procedure

On September 13, 1993, the Bales filed suit against Rick Shaw, alleging that he had sexually molested E.R.B. from 1985 to 1989, when E.R.B. was a teenager. They also sued the Local Church and State Office, alleging negligent hiring, supervision, and/or investigation of Shaw. The Baleses claimed that the acts or omissions of Shaw, the Local Church, and the State Office constituted the torts of outrage, intentional and/or negligent infliction of emotional distress, negligent pastoral counseling, and breach of the pastoral privilege.

On September 15, 1995, the trial court granted defendants' motions for summary judgment, dismissing John and Jody Bales' claims against all defendants and dismissing E.R.B.'s claims against the Local Church and State Office as barred by the statute of limitations, RCW 4.16.080(2). The trial court refused to dismiss E.R.B.'s claim against Shaw, finding that RCW 4.16.340 (a special statute of limitations for claims brought by victims of childhood sexual abuse against their abuser) precluded summary judgment as a matter of law.

On appeal, the Baleses argue that the trial court erred in granting summary judgment in favor of the defendants because: (1) the testimony of psychologist Dr. McGovern created a material issue of fact regarding when E.R.B. knew

or reasonably should have known of the cause and extent of his injuries, and (2) there are issues of fact regarding when John and Jody Bales had sufficient knowledge of the facts constituting their claims to trigger the statute of limitations under Washington's discovery rule.

## ANALYSIS

In reviewing summary judgment, an appellate court engages in the same analysis as the trial court. *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 634, 854 P.2d 23 (1993). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A court must consider the facts and all reasonable inferences from those facts "in the light most favorable to the nonmoving party." *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992) (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). Summary judgment is appropriate if the evidence could lead a reasonable person to reach but one conclusion. *Hansen*, 118 Wn.2d at 485 (citing *Wilson*, 98 Wn.2d at 437).

### I

#### STATUTE OF LIMITATIONS

A three-year statute of limitations applies to each of plaintiffs' claims. *See* RCW 4.16.080(2).[2] But when the injured party is a minor, the three-year statute of limitations is tolled until the injured party reaches the age of 18. RCW 4.16.190;[3] *St. Michelle v. Robinson*, 52 Wn. App. 309, 759 P.2d 467 (1988) (outrage and intentional infliction of emotional distress).

---

[2]The trial court found that a two-year statute of limitations applies to the tort of outrage. But the parties have not briefed this issue.

[3]*See also* RCW 4.16.340(1), tolling the three-year statute of limitations for childhood sexual abuse claims until the victim reaches the age of 18.

E.R.B. argues that the common-law discovery rule tolled the statute of limitations on his claims against the Local Church and State Office until he realized the full extent of his injuries and the causal link between these injuries and Shaw's abuse. E.R.B. concedes that RCW 4.16.340 does not apply to these claims, but insists that the common-law discovery rule should be applied in the same manner as RCW 4.16.340. He also argues that Dr. McGovern's testimony creates an issue of fact regarding when E.R.B. discovered the causation and extent of his injuries.

John and Jody Bales argue that the common-law discovery rule tolled their claims against all defendants until July 1993, when E.R.B. admitted to them that Shaw had molested him.

A.   RCW 4.16.340 — Limited to Claims Against Abusers

■ "RCW 4.16.340 permits a plaintiff to bring personal injury claims based on intentional conduct suffered as a result of childhood sexual abuse within three years of the date on which the act that caused the injury is discovered." *Jamerson v. Vandiver*, 85 Wn. App. 564, 567, 934 P.2d 1199, *review denied*, 133 Wn.2d 1005 (1997). RCW 4.16.340 provides:

**Actions based on childhood sexual abuse.**

(1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:

(a) Within three years of the act alleged to have caused the injury or condition;

(b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or

(c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:

PROVIDED, That the time limit for commencement of an

action under this section is tolled for a child until the child reaches the age of eighteen years.

. . . .

(5) . . . "childhood sexual abuse" means any *act committed by the defendant against a complainant* who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed.

(Emphasis added).

RCW 4.16.340(1) tolls the statute of limitations for personal injury claims based on intentional conduct suffered as a result of childhood sexual abuse "only for claims against the abuser." *Jamerson*, 85 Wn. App. at 567. Any other related claims filed after the running of the statute of limitations are properly dismissed as time-barred. *Jamerson*, 85 Wn. App. at 567.

Here all three plaintiffs' claims against all three defendants were filed in 1993, more than three years after the last incident of sexual abuse in 1989. The trial court found that RCW 4.16.340 tolled the statute of limitations for only victim E.R.B.'s suit against abuser Shaw. This finding has not been appealed. Thus RCW 4.16.340 does not operate here to toll the statute of limitations for E.R.B.'s claims against the State and Local Churches or for any of his parents' claims.

## B. The Common-Law Discovery Rule

Defendants argue that the common-law discovery rule does not apply to any of plaintiffs' claims. Defendants also argue that even if the discovery rule did apply, the Baleses' claims would still be time-barred. We agree with the court below that, except for E.R.B.'s action against Shaw, the Baleses' actions were time-barred.

In most cases a cause of action accrues at the time the tortious act or omission occurred. *In re Estates of Hib-*

*bard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992) (citing *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4TH 955 (1985)). But under the discovery rule, the statute will begin to run at a later date if the plaintiff did not and could not, through the exercise of due diligence, discover the factual basis of the cause of action at an earlier date. *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992).

The factual, not the legal, basis of the action is the key consideration under the discovery rule. "The action accrues when the plaintiff knows or should know of the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Allen*, 118 Wn.2d 758; *see also Doe v. Finch*, 133 Wn.2d 96, 942 P.2d 359 (1997). To invoke the discovery rule, the plaintiff must show that he or she could not have discovered the relevant facts earlier. *G.W. Constr. Corp. v. Professional Serv. Indus. Inc.*, 70 Wn. App. 360, 367, 853 P.2d 484 (1993). Unless the facts are susceptible of only one reasonable interpretation, it is up to the jury to determine whether the plaintiff has met this burden. *Goodman v. Goodman*, 128 Wn.2d 366, 907 P.2d 290 (1995).

The discovery rule balances the defendant's right not to defend stale claims against the " 'unconscionable result of barring an aggrieved party's right to recovery before a right to judicial relief even arises.' " *Beard v. King County*, 76 Wn. App. 863, 868, 889 P.2d 501 (1995) (quoting *First Md. Leasecorp v. Rothstein*, 72 Wn. App. 278, 283, 864 P.2d 17 (1993)). Under this rationale, the statute of limitations begins to run once the claimant "reasonably suspects that a specific wrongful act has occurred," *Beard*, 76 Wn. App. at 868, because:

> [a]t that point, the potential harm with which the discovery rule is concerned — that remedies may expire before the claimant is aware of the cause of action — has evaporated. The claimant has only to file suit within the limitation period and use the civil discovery rules within that action to determine whether the evidence necessary to prove the cause of action is

obtainable. If the discovery rule were construed so as to require knowledge of conclusive proof of a claim before the limitation period begins to run, many claims would never be time barred.

*Beard*, 76 Wn. App at 868.

## 1. Application of the Discovery Rule to E.R.B.'s Claims Against State Office and Local Church

There is no legal support for E.R.B.'s argument that the common-law discovery rule should be judicially expanded to achieve the same effect as RCW 4.16.340. Before the Legislature enacted RCW 4.16.340, Washington courts refused to extend the common-law discovery rule to cases involving sexual abuse. *See e.g., Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986);[4] *Raymond v. Ingram*, 47 Wn. App. 781, 737 P.2d 314 (1987).[5]

██ ██ Here, even if judicially expanded, the common-law discovery rule would not apply to E.R.B.'s claims against the Local Church and the State Office because the record clearly shows, and the trial court so found, that while still a minor E.R.B. clearly knew the facts of the abuse relevant to establish a claim. The trial court found that:

> [E.R.B.] knew he was being sexually molested by Rick Shaw. He told . . . Donna Shaw that he had been sexually molested by a member of the church. He knew the molestation was wrong, knew it was causing him substantial harm, as he attempted suicide, and he knew Rick Shaw was a minister of his church.

In light of these facts, well-supported in the record, E.R.B. cannot use Dr. McGovern's testimony, that E.R.B. did not fully understand the extent and cause of *his injuries until*

---

[4]The discovery rule does not apply to a claim of childhood sexual abuse based solely on a repressed memory.

[5]Plaintiff need only have knowledge of the abuse itself; the statute of limitations is not tolled until plaintiff goes into therapy and discovers the extent and cause of the resulting injuries.

he filed his action in July 1993, to create an issue of *material* fact relative to E.R.B.'s claims against the State Office and Local Church.[6] Nor would Dr. McGovern's contrary opinion thereby toll the statute of limitations, which, under the discovery rule would have began to run when E.R.B. knew of the harm or turned 18, whichever came later, both events occurring more than three years before E.R.B. sued the Local Church and State Office.[7] The time for filing those actions began to run on February 14, 1989, when E.R.B. turned 18.

## 2. Application of the Discovery Rule to Jody and John Bales' Claims Against All Three Defendants

### a. *Concealment*

■ The Washington State Supreme Court recently held that "[i]n cases where 'plaintiffs could not have immediately known of their injuries due to . . . concealment of information by the defendant[,]' this court has allowed the common-law discovery rule to toll a statute of limitation." *Finch*, 133 Wn.2d at 101 (quoting *Hibbard*, 118

---

[6] "'When a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issues of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony' ". *Marshall v. A.C.&S., Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)) (alteration in original). Dr. McGovern's testimony, which is based on his consulting with E.R.B., is analogous to a party's too-late attempt to create an issue of fact about when an injury should have been discovered. In *Marshall*, the record reflected his asbestos diagnosis during a July 1982 hospital visit for a respiratory ailment. The court rejected Marshall's later claim that he was not aware of his breathing problems until 1983 or 1985, the later dates critical to establish timeliness of his November 1985 filing of a lawsuit against the shipyard, where he had been exposed to asbestos in the 1950s. Division One upheld the trial court's finding of no issue of material fact as to when Marshall knew of the cause of his respiratory ailment and the expiration of the statute of limitations before Marshall filed his lawsuit.

[7] A recent Division One case, *C.J.C. v. Corporation of Catholic Bishops*, 88 Wn. App. 70, 943 P.2d 1150 (1997), did not address the issue before us here; the relevant facts are also distinguishable. C.J.C. had nightmares after being molested at the age of 14 or 15 by Catholic priests, but did not recognize the connection to his adult drug abuse and other forms of mental distress until many years later. Here, E.R.B., in contrast, knew before he turned 18 that the molestation was wrong and causing him substantial harm.

Wn.2d at 749-50). In *Finch,* there were issues of fact regarding the commencement of the statute of limitations under the discovery rule. Whether to extend the discovery rule to the circumstances of a particular case is "a judicial policy determination." *Gazija v. Nicholas Jerns Co.,* 86 Wn.2d 215, 221, 543 P.2d 338 (1975); *Peters v. Simmons,* 87 Wn.2d 400, 405, 552 P.2d 1053 (1976).

We recently discussed the application of the discovery rule in *Crisman v. Crisman,* 85 Wn. App. 15, 931 P.2d 163, *review denied,* 132 Wn.2d 1008 (1997):

> This rule [the discovery rule] is a court doctrine designed to balance the policies underlying statutes of limitations against the unfairness of cutting off a valid claim where the plaintiff, due to no fault of her own, could not reasonably have discovered the claim's factual elements until some time after the date of the injury.
>
> Courts apply the discovery rule to two categories of cases. Traditionally, the rule has been applied in cases where the defendant fraudulently conceals a material fact from the plaintiff and thereby deprives the plaintiff of the knowledge of accrual of the cause of action . . . .
>
> The second category of cases does not depend upon evidence of fraudulent concealment. Rather, courts apply the doctrine where the nature of the plaintiff's injury makes it extremely difficult, if not impossible, for the plaintiff to learn the factual elements of the cause of action within the specified limitation period.

*Crisman,* 85 Wn. App. at 20-21 (citations omitted).

John and Jody Bales contend the statute of limitations did not begin to run on their claims until July 1993, when E.R.B. told them Shaw had molested him. The Baleses argue that before E.R.B. admitted the abuse, they could not have learned of their causes of action. Although there is evidence that Shaw concealed important information from John and Jody Bales and from the Church, there is no evidence that the Local Church or the State Office concealed anything from the Baleses.

In *Beard*, Division One held that:

> [T]he limitation period begins to run when the factual elements of a cause of action exist and the injured party knows or should know they exist, whether or not the party can then conclusively prove the tortious conduct has occurred. A smoking gun is not necessary to commence the limitation period. An injured claimant who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken.

*Beard*, 76 Wn. App. at 868.

### b. *Commencement of Statute of Limitations*

Even if the discovery rule applied to the Baleses' actions, the statute of limitations would have begun to run no later than July 1990, when the Baleses submitted their letter and Incident Report to the State Office and Local Church. The letter and Incident Report reveal that by July 12, 1990, John and Jody Bales had a concrete belief that Shaw had abused their son and that the Local Church and State Office were partly to blame. The Baleses do not dispute these facts, but argue that they did not have sufficient evidence to initiate a lawsuit at that time because E.R.B. would not come forward. Nonetheless, the 1990 letter and Incident Report enumerated several concrete instances of abuse perpetrated upon E.R.B. by Shaw. Moreover, it was also clear that E.R.B.'s parents were concerned as early as 1988 that he was being sexually abused by someone, whom they suspected was Shaw.

Even if the Baleses did not have a reasonable suspicion of the facts supporting their claims, they have not shown that, with due diligence, they could not have known of their cause of action before August of 1990. The uncontroverted testimony of Jody Bales is that she did not ask E.R.B. directly about the abuse because he had already communicated it to her in so many words.

In sum, John and Jody Bales have not shown that they did not know, and could not have known, of their causes of

action against Shaw, the Local Church, and the State Office before August 27, 1990. The trial court properly concluded that as of July 1990:

> John and Jody Bales had numerous reasonable suspicions that specific wrongful sexual acts were occurring between Rick Shaw and their son; made their suspicions known to the minister of their local church as well as writing a letter to the state office. They did not believe that the response to their complaints was appropriate, and they were distressed not only because of the lack of church response but also because of the effect Rick Shaw's acts had on their son, as it caused them to be "Parents in Distress." They also knew Rick Shaw was a minister in their church. They wrote a letter to the State Office which set forth in detail their concerns regarding Rick Shaw. No reasonable argument can be made that the factual basis of their claim was somehow hidden or unknown to them.

## II

### FIDUCIARY DUTY

The Baleses argue for the first time on appeal that Shaw, the Local Church, and the State Office stood in a fiduciary relationship with E.R.B. and that the existence of such a fiduciary relationship tolls the statute of limitations. The Baleses failed to raise this argument below; therefore we do not consider it. RAP 2.5(a); RAP 9.12; *Washington Fed'n of State Employees v. Office of Fin. Management*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993).

## CONCLUSION

For the forgoing reasons, we affirm the decision of the trial court.

SEINFELD and ARMSTRONG, JJ., concur.

Reconsideration denied March 6, 1998.

Review granted at 135 Wn.2d 1001 (1998).