9 P.3d 845 (2000)
In re the ESTATE OF Clarence Lester PETERSON, Deceased.
Betty P. Ianicelli and Lester Roy Peterson, Appellants,
v.
Vickie Peterson, Diane Peterson, Linda Peterson, William Joseph Peterson, Personal Representative, Terrina Peterson, Gina Knight, Victoria Steve (Peterson), Eun Young Lee, Respondents.
No. 24091-2-II.
Court of Appeals of Washington, Division 2.
August 18, 2000.
Publication Ordered September 15, 2000.
*846 Stephen Jesse Oelrich, Sverre O. Staurset, Law Offices of Sverre O. Staurset, Tacoma, for Appellants.
Dale B. Sawyer, Foshaug, McGoran, Sawyer, Arnoff, Federal Way, Jack W. Hanemann, Hanemann, Bateman, Jones & Bardwil, Olympia, for Respondents.
HUNT, J.
Betty Ianicelli and Lester Peterson appeal the trial court's denial of their motion for reconsideration, in which they sought application of the common law discovery rule to extend the four-month period for contesting a will under RCW 11.24.010. We affirm.

FACTS
Clarence L. Peterson has six children.[1] After his second wife died, Peterson, then in his seventies, married Victoria Steve, then in her mid-twenties, on June 5, 1995. Thereafter, Peterson changed his will three times and added two codicils. Each change reduced his children's, grandchildren's, and other heirs' shares of his estate, while increasing Victoria Steve Peterson's share. One codicil provided that if any beneficiary contested his will, that person's inheritance would be reduced to $10. Except for his sons, William Joseph Peterson and Lester Roy Peterson, Peterson's other adult children lived in Georgia.
Clarence Peterson died on October 11, 1997. One month later, on November 13, 1997, the court appointed his son William Joseph Peterson as his personal representative, and Peterson's will was admitted to probate. The next day, November 14, 1997, the personal representative published a notice to creditors to file all claims against the estate under RCW 11.40.020. In response to this notice, Betty Ianicelli, Peterson's daughter, filed a creditor's claim against the estate.
On March 11, 1998, Betty Ianicelli and Lester Peterson (the Contestants), filed a Claim of Heirs to notify the estate of their suspicions of fraudulent conduct by Victoria Steve Peterson in marrying their father and depriving him of his money and property. They alleged that she was a member of the notorious Steve gypsy family of Tacoma, many of whom were "currently awaiting trial for FRAUD in Pierce County." To support their allegations, they attached newspaper articles that detailed the involvement of the Steve family in welfare and insurance scamsnone of which mentioned Victoria Steve Peterson's involvement.
The Contestants alleged that Victoria Steve Peterson had lied to Peterson about family illnesses and corresponding medical expenses to obtain cash and vehicles that were later sold and converted to cash. The Contestants suspected that Victoria Steve *847 Peterson's marriage to their father was a sham "for the purpose of continuing and facilitating the fraud against Mr. Peterson." They alleged that she never established a marital residence, nor ever spent the night with their father.[2] They asked that:
the marriage of Victoria Steve and Mr. Clarence L. Peterson be declared null and void and that an accounting be made of all monies received in cash or kind by Victoria Steve, her relatives, friends and/or associates. That any and all bequests in Mr. Peterson's WILL, purporting to give to Victoria Steve "Peterson" as "my wife" are null and void and that the WILL be declared null and void.
Approximately one month later, on April 27, 1998, the personal representative rejected his siblings' claims. He rejected the Claim of Heirs because it was not a Creditor's Claim and because
no facts in the Claim of Heirs regarding the validity of the Petersons' marriage or other fraudulent acts are declared under oath and the attachments only cite allegations regarding the Steve family in general, not specifically against Victoria Steve Peterson.
He also rejected Ianicelli's Creditor's Claim. The personal representative notified the parties that they must sue him within 30 days of the rejection to preserve their claim. RCW 11.40.100(1). The Contestants failed to do so.
Approximately one month after the statutory period for filing a will contest had expired, a television news story aired regarding the Peterson estate. In response to the news story, a self-proclaimed gypsy nation representative, J. James Marks, telephoned the Contestants' counsel. According to the Contestants, Marks corroborated their allegations of fraud in their Creditor's Claim and Claim of Heirs.
On May 22, 1998, more than two months after the statutory four-month period for will contests had expired,[3] the Contestants filed a Petition for Revocation of Probate of Peterson's will and codicil (Petition) based on fraud. The Petition contained the same allegations of fraud as in the Claim of Heirs: that the marriage was a sham to allow Victoria Steve Peterson and her family to continue to "engage[] in a conspiracy to defraud decedent of his money, property and estate." The Contestants also detailed the dates and changes Clarence Peterson had made to his will and the accompanying codicils. The Contestants alleged that: (1) Clarence Peterson was subjected to over-reaching, duress, fraud, and undue influence as a result of misrepresentations and frauds perpetrated by Victoria Steve Peterson and other members of her family; and (2) as a result, Victoria Steve Peterson procured Clarence Peterson's signature on the will that "granted her significant bequests at the expense of decedent's natural bounty. The wills signed by decedent were not the results of decedent's free will."
On June 8, 1998, the Contestants took the deposition of J. James Marks, Jr.[4] Victoria Steve Peterson was once married to his son, and her ex-father-in-law was willing to share what he knew of her background. He also provided information about gypsy females who sought "gustimano" or "sugar daddies" "that gypsy girls prey on to receive supplemental income."[5] Marks related Victoria Steve Peterson's interactions with Clarence *848 Peterson and how she bragged she had hooked "a whale."[6]
Victoria Steve Peterson moved to dismiss under CR 12(b)(1), because the Contestants' Petition was untimely. RCW 11.24.010. The trial court granted her motion to dismiss with prejudice.
The Contestants filed a motion for reconsideration, arguing for the first time that the trial court should extend the "discovery rule" to will contests in probate proceedings. The trial court declined to do so and denied the motion.
The Contestants appealed. Their primary argument for applying the discovery rule to this will contest is that they could not have learned of the facts underlying the fraud until after the period to file a will contest had expired.

ANALYSIS
We review a trial court's denial of a motion for reconsideration for abuse of discretion. Meridian Minerals Co. v. King County, 61 Wash.App. 195, 203-04, 810 P.2d 31, rev. denied, 117 Wash.2d 1017, 818 P.2d 1099 (1991). Abuse of discretion occurs when the trial court's decision rests on untenable grounds or untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971); Meridian Minerals, 61 Wash.App. at 204, 810 P.2d 31. Granting a motion to dismiss under CR 12(b)(1)[7] is a question of law, which we review de novo, drawing all inferences in favor of the plaintiff. Vestron Inc. v. Home Box Office Inc., 839 F.2d 1380, 1381 (9th Cir.1988); Kearney v. Kearney, 95 Wash.App. 405, 411 974 P.2d 872 (1999) (citing Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994)).
The Contestants ask us to apply the common law discovery rule to toll RCW 11.24.010's four-month period for filing will contests for cases of fraud "when contestants cannot and do not learn of the facts underlying the fraud until after the four-month limitations period" has expired. They argue that we can extend the discovery rule without a specific statutory authorization and that we have the equitable authority to "look beyond the statutory framework in matters involving `fraud of the grossest kind.'" We agree with Victoria Steve Peterson that applying the discovery rule to excuse the Contestants' failure to file a timely will contest would be contrary to the Legislature's historical objective, which has been to shorten the filing period for will contests.

A. THE DISCOVERY RULE
The "discovery rule" was adopted by the Washington Supreme Court in Ruth v. Dight, 75 Wash.2d 660, 453 P.2d 631 (1969), a medical malpractice case.[8] The Court held that statute of limitations begins to run in medical malpractice cases when "the patient discovers or, in the exercise of reasonable care for his own health and welfare, should have discovered the presence of the foreign substance or article in his body." Ruth, 75 Wash.2d at 667-68, 453 P.2d 631. Since Ruth, Washington courts have refined the discovery doctrine, but only in tort cases. There is neither precedent nor cause for us to extend the rule here.
Moreover, even were we to consider it, this case would not present facts justifying extension of the discovery rule. The contestants were well aware of the basis of their fraud claims at the time they filed their Claim of Heirs,[9] within the four-month statutory period. *849 In that Claim, they alleged that the Peterson marriage was a sham, that Victoria Steve Peterson acted fraudulently, and that the marriage should be declared null and void. The Contestants needed only to file their petition within the statutory time frame; having failed to do so, they have lost their right to contest the will.
The Washington Supreme Court has declined to apply the discovery rule to a probate statute that was silent regarding the discovery rule. Ruth, 75 Wash.2d at 660, 453 P.2d 631. The court did not extend the discovery rule to the nonclaim statute, RCW 11.40.010; Ruth, 75 Wash.2d at 670, 453 P.2d 631. Nor did it allow the plaintiff to recover from the tortfeasor-doctor's estate, even though it had done so for the plaintiff's medical malpractice claim, which was time barred under RCW 4.16.010[10] and .080(2) (1975). Ruth, 75 Wash.2d at 668-69, 453 P.2d 631. The court compared the three-year statute of limitations (RCW 4.16.080(2))[11] to the language of the nonclaim statute, RCW 11.40.010.[12] RCW 11.40.010 (1969) provided in pertinent part:
Every executor or administrator shall, immediately after his appointment, cause to be published ... a notice ... to the creditors of the deceased, requiring all persons having claims against the deceased to serve the same on the executor or administrator... within six months[[13]] after the date of the first publication of such notice.... If a claim be not filed within the time aforesaid, it shall be barred.

Ruth, 75 Wash.2d at 669, 453 P.2d 631 (emphasis added). The court held: "The nonclaim statute is mandatory and not subject to enlargement by interpretation; and it cannot be waived"; and the plaintiff's claims against the doctor's estate were barred. Ruth, 75 Wash.2d at 669-70, 453 P.2d 631 (citations omitted). The language of RCW 11.24.010 has the same precision and definitiveness relating to the commencement of a will contest action, and the subsequent barring of late actions, as the nonclaim statute analyzed in Ruth. Therefore, we extend the Supreme Court's ruling in Ruth to the case before us and similarly decline to extend the discovery rule.

B. EQUITY
The Contestants next rely on In re the Estate of Lint, 135 Wash.2d 518, 957 P.2d 755 (1998), for the principle that we have the "equitable authority" to look beyond the statutory framework in matters involving "fraud of the grossest kind." Lint is inapposite. Lint involved a will contest that challenged the validity of the testatrix's will and the validity of her brief, non-legal marriage to Christian Lint. Lint, 135 Wash.2d at 530, 957 P.2d 755. After receiving information that Christian was exercising undue influence over the testatrix and isolating her from family and friends, the contestants timely filed their petition to challenge the will. Lint, 135 Wash.2d at 530, 957 P.2d 755. The trial court concluded that the testatrix's will was "procured by fraud and undue influence and that her marriage to Christian was void due to lack of solemnization, [the testatrix's] incompetence at the time of marriage," and "exceptional circumstances indicating fraud of the grossest kind." Lint, 135 Wash.2d at 530, 957 P.2d 755 (emphasis added).
There were also substantial questions regarding about the testatrix's competence when she signed financial powers of attorney, which a notary refused to notarize. Lint, 135 Wash.2d at 524-25, 957 P.2d 755. The "married couple" not only lacked a marriage *850 license, but a video tape of the ceremony revealed that the testatrix was not well and was unable to complete sentences or repeat words after they were spoken to her. Lint, 135 Wash.2d at 526, 957 P.2d 755. Furthermore, Lint helped her "practice writing her name" before they arrived at the courthouse to apply for a marriage license. Lint, 135 Wash.2d at 526, 957 P.2d 755.
The Lint court found these exceptional circumstances allowed them to go outside the statutory framework of RCW 26.09.040[14] to declare the marriage invalid, even though one of the marriage partners was dead. Lint, 135 Wash.2d at 539, 957 P.2d 755. Although nullifying an unsolemnized, fraudulent marriage, the Lint court did not, however, circumvent the Legislature's time-limit for filing will contests, in spite of allegations of fraud.
Nor has the Washington Supreme Court been willing to use the rules of civil procedure to enlarge the statutory period for will contests, which were based on fraud. In re Estate of Toth, 138 Wash.2d 650, 981 P.2d 439 (1999). In holding that the four-month period for contesting wills was not tolled by the CR 6(e), the court stated:
Will contests are statutory proceedings, and courts "must be governed by the provisions of the applicable statute." In re Estate of Van Dyke, 54 Wash.App. 225, 228, 772 P.2d 1049 (1989). RCW 11.24.010 sets the time period for interested parties seeking to contest wills that have been admitted to probate. The statute provides that any person seeking to contest a will "shall appear within four months immediately following the probate or rejection" of the will. Washington cases have held that the time period imposed by RCW 11.24.010 begins to run on the date the will is admitted to probate. In re Estate of Barr, 76 Wash.2d 59, 60-61, 455 P.2d 585 (1969); In re Estate of Young, 23 Wash.App. 761, 763, 598 P.2d 7 (1979).
Toth, 138 Wash.2d at 653, 981 P.2d 439.

C. LEGISLATIVE HISTORY
The courts' decisions are consistent with legislative history relating to RCW 11.24.010. Initially, the time period to contest a will was one year. State ex rel. Wood v. Superior Court, 76 Wash. 27, 31, 135 P. 494 (1913) (citing Rem. & Bal[l].Code, § 1307 ([Pierce's Code] 409 § 115). In 1917, the Legislature reduced the period to six months. Laws of 1917, ch. 156, § 15. Fifty years later, the Legislature again reduced the period, this time, from six to four months, the time period applicable to the case before us. Laws of 1967, ch. 168, § 6.
The Legislature was not silent regarding the four-month period for commencing a will contest. RCW 11.24.010. Unlike RCW 26.09.040, which enumerates the reasons for invalidating a marriage, RCW 11.24.010 directs "any person" interested in "any will" to appear within four months "immediately following the probate," and "[i]f no person shall appear within the time under this section, the probate or rejection of such will shall be binding and final." (Emphasis added.) Here, the statute is unambiguous that the period for contesting a will begins at the date of probate and ends four months later. RCW 11.24.010.
Washington courts have historically declined to extend the statutory period in which to contest a will:
[T]his court has held that, a will having been admitted to probate, and no contest initiated within the statutory limitation, the superior court can not entertain an application for probate of a later will (State ex rel. Wood v. Superior Court, 76 Wash. 27, 135 P. 494); that "all contests based upon any cause affecting the validity of the will must be commenced within ... [the time limited], and if not so commenced the probate becomes a final adjudication as to the validity of the will, binding upon the whole world, ..." (Horton v. Barto, 57 Wash. 477, 107 P. 191, 135 Am.St.Rep. 999 [(]1910[)]); that the statute bars any subsequent contest or proceeding at law or in equity to set aside the probate on the ground of fraud inducing the will or procuring its probate, or on the ground that it *851 has been revoked by a subsequent marriage (In re Hoscheid's Estate, 78 Wash. 309, 139 P. 61 [(]1914[)]).
In re Randall's Estate, 8 Wash.2d 622, 625-26, 113 P.2d 54 (1941) (emphasis added). Even in the case of will contests, our Supreme Court has acknowledged that "factual inequities do not justify circumventing a clear rule articulated by the Legislature." Toth, 138 Wash.2d at 657, 981 P.2d 439.
The Contestants correctly relate that the Legislature has applied the discovery rule to probate proceedings. Relying on RCW 11.96.060(1), they argue that the discovery rule has been applied to actions against trustees and that, accordingly, we should extend the discovery rule to will contests. But this argument is again contrary to the legislative intent: RCW 11.96.060(1) demonstrates that although the Legislature has expressly extended the discovery rule to actions against trustees, it has declined to do so in will contests. Reading RCW 11.24.010 and 11.96.060(1) together, we infer that had the Legislature intended to extend the discovery rule to RCW 11.24.010, it would have done so. Consequently, because the Legislature did not express its intent to extend the discovery rule to will contests, we decline to do so.
We hold that the trial court did not abuse its discretion in denying the Contestants' request to extend the discovery rule to will contests and their motion for reconsideration. Affirmed.
ARMSTRONG, C.J., and BRIDGEWATER, J., concur.
NOTES
[1] Clarence Peterson's six children are: Vickie Peterson, Betty Ianicelli, Diane Peterson, Linda Peterson, Lester Roy Peterson, and William Joseph Peterson. Victoria Steve was Peterson's third wife, whom he married after his second wife of 47 years, died.
[2] Victoria Steve Peterson stated in her declaration that she and Clarence Peterson lived as husband and wife until his death, the marriage was consummated, and that Peterson had changed his will without her knowledge or consent.
[3] RCW 11.24.010.
[4] In her declaration, Victoria Steve Peterson admits that she had been previously married to James Marks' son, for whom she took "the fall" for an auto theft charge. Marks filed a multimillion-dollar civil rights suit against the City of Spokane, and Victoria Steve Peterson was called to testify against him. She alleges that Marks and his relatives have been spreading "false statements and rumors about" her and that Marks' three sons harassed her and "beat [her] up." Victoria Steve Peterson did obtain a restraining order against two of Marks' three sons.
[5] According to Marks, the girls engage an older man in a "relationship" where "they invite him into ... the gypsy home," take care of him, run errands, take them on trips, and "endear[] themselves" to the man.
[6] A "whale" is the gypsy term for a big catch.
[7] CR 12(b) provides:

Every defense, in law or fact, to a claim for a relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter...."
[8] In 1971, the Legislature codified the discovery rule announced in Ruth for medical malpractice cases. RCW 4.16.350; Laws of 1971, ch. 80, § 1.
[9] Even under the rationale for applying the discovery rule to tortious conduct, "the statute of limitations begins to run once the claimant `reasonably suspects that a specific wrongful act has occurred[.]'" E.R.B. v. Church of God, 89 Wash. App. 670, 681-83, 950 P.2d 29 (1998) (citing Beard v. King County, 76 Wash.App. 863, 868, 889 P.2d 501(1995)), reversed on other grounds, C.J.C. v. Corporation of Catholic Bishop of Yakima, 138 Wash.2d 699, 985 P.2d 262 (1999).
[10] Laws of 1984, ch. 76, § 9, repealed RCW 4.16.010. Originally it held "the actionable event as the accrual of a cause of actiona term susceptible to interpretation...." Ruth, 75 Wash.2d at 666, 453 P.2d 631.
[11] RCW 4.16.080(2) states: "[W]ithin three years: ... (2) An action for taking, detaining or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated."
[12] RCW 11.40.010 was substantially rewritten in 1989. Laws of 1989, ch. 333 § 1.
[13] The period for filing a will contest has since been reduced to four months. RCW 11.24.010; Laws of 1967, ch. 168, § 6.
[14] RCW 26.09.040(1) provides: "[w]hile both parties to an alleged marriage are living ... a petition to have the marriage declared invalid may be sought."