157 P.3d 443 (2007)
Robert FONTANA, Appellant,
v.
DIOCESE OF YAKIMA; and Carlos Sevilla, Respondents.
No. 25328-7-III.
Court of Appeals of Washington, Division 3.
May 3, 2007.
*444 Gary Edward Lofland, Yakima, WA, for Appellant.
Robert Morrill Boggs, Yakima, WA, for Respondent.
BROWN, J.
¶ 1 This appeal turns on the application of the ministerial exception, an outgrowth of the First Amendment's guarantees of religious freedom. The exception precludes subject matter jurisdiction over claims involving the employment relationship between a religious institution and its ministerial employees, based on the institution's constitutional right to be free from judicial interference in the selection of those employees. See generally Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). Applying the exception, the trial court dismissed Robert Fontana's constructive discharge suit against the Catholic Diocese of Yakima (Diocese) and his supervisor, Bishop Carlos Sevilla. We agree the exception applies, and affirm.

FACTS
¶ 2 The Diocese hired Mr. Fontana as director of evangelization. A job description statement articulated after Mr. Fontana was hired, but during his employment, states that the director job entails development and implementation of "evangelization adult formation programs in Christian discipleship, Scripture, the Catholic Faith as summarized in the Creed, Sacraments, Liturgy, Morality, Spirituality, Evangelization and Social Justice with the goal of preparing every Catholic *445 for ministry in the Church and mission in society." Clerk's Papers (CP) at 200. Mr. Fontana helped compile a handbook for the Deacon Formation Program and guidelines for the Parish Pastoral and Finance Councils. In Bishop Sevilla's opinion, Mr. Fontana's job "was directly related to the teaching of the Catholic Faith and doctrine." CP at 24.
¶ 3 The Diocese discovered pictures on a priest's computer of naked adolescent boys on a beach. When confronted, the priest attempted suicide. In response, the Diocese sent him to a psychiatric facility. The computer was turned over to the Yakima County Prosecutor's office and the U.S. Attorney's office. No charges were filed.
¶ 4 The priest returned to the Diocese and was placed at St. Paul's Cathedral where Bishop Sevilla resided and a Catholic school is located. Bishop Sevilla put the priest under the direct supervision of another priest. Eventually, the priest took a leave of absence, and apparently has become employed elsewhere. Two reviewing committees reviewed Bishop Sevilla's actions and concluded he acted within established norms.
¶ 5 Mr. Fontana disagreed with Bishop Sevilla's handling of the situation. In a letter to Bishop Sevilla, Mr. Fontana expressed his dissatisfaction but expressed his devotion to Bishop Sevilla and his "commitment to minister in the church." CP at 104.
¶ 6 Later, Bishop Sevilla began to lose trust in Mr. Fontana's ability to carry out some duties "due to several instances where, [he] believe[d] Mr. Fontana went beyond his delegated authority, and where [he] received complaints about his programs." CP at 24. Mr. Fontana's duties were cut back, but he received the same salary, benefits, and tuition breaks for his children. He continued to direct the "Magnificat," a "Pastoral Institute for Lay Formation Preparing the Church for Ministry and Mission." CP at 104.
¶ 7 Mr. Fontana resigned and sued, alleging retaliatory constructive discharge. The Diocese and Bishop Sevilla moved to dismiss under CR 12(b)(1) (lack of subject matter jurisdiction), CR 12(b)(6) (failure to state a claim upon which relief can be granted), and/or CR 56 (summary judgment). The court granted the Diocese and Bishop Sevilla's motion, concluding it did not have subject matter jurisdiction based on its finding Mr. Fontana's employment was ministerial. Mr. Fontana appealed.

ISSUE
¶ 8 The issue is whether the trial court erred in dismissing Mr. Fontana's complaint for lack of subject matter jurisdiction under the ministerial exception. Mr. Fontana contends the court erred in concluding it lacked subject matter jurisdiction based on the court's findings that his responsibilities were ministerial.

ANALYSIS
¶ 9 "Without subject matter jurisdiction, a court or administrative tribunal may do nothing other than enter an order of dismissal." Inland Foundry Co., v. Spokane County Air Pollution Control Auth., 98 Wash.App. 121, 123-24, 989 P.2d 102 (1999). We review de novo an order of dismissal for lack of subject matter jurisdiction. In re Estate of Peterson, 102 Wash.App. 456, 462, 9 P.3d 845 (2000).
¶ 10 The ministerial exception "precludes subject matter jurisdiction over claims involving the employment relationship between a religious institution and its ministerial employees." Hollins v. Methodist Healthcare, Inc., 474 F.3d 223, 225 (6th Cir.2007) (citing generally Serbian E. Orthodox Diocese, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151).
¶ 11 Division One of this court has recognized the ministerial exception. Elvig v. Ackles, 123 Wash.App. 491, 496-97, 98 P.3d 524 (2004). "Secular courts must avoid controversies between a church and its minister `because the introduction of government standards to the selection of spiritual leaders would significantly, and perniciously, rearrange the relationship between church and state.'" Id. at 497, 98 P.3d 524 (quoting Gates v. Catholic Archdiocese of Seattle, 103 Wash.App. 160, 166, 10 P.3d 435 (2000)). Moreover, "[a]n investigation and review of such matters of church administration and *446 government as a minister's salary, his place of assignment and his duty . . . could only produce by its coercive effect the very opposite of that separation of church and State contemplated by the First Amendment." McClure v. Salvation Army, 460 F.2d 553, 560 (5th Cir.1972).
¶ 12 In deciding whether Mr. Fontana's position was ministerial, we look to the function of his position. See Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 703 (7th Cir.2003) ("In determining whether an employee is considered a minister for the purposes of applying [the ministerial] exception, we do not look to ordination but instead to the function of the position."); Equal Employment Opportunity Comm'n v. Roman Catholic Diocese of Raleigh, N.C., 213 F.3d 795, 801 (4th Cir.2000) ("Our inquiry . . . focuses on `the function of the position' at issue and not on categorical notions of who is or is not a `minister.'"); Starkman v. Evans, 198 F.3d 173, 175 (5th Cir.1999) (holding that a choir director qualified as a "minister" for purposes of the ministerial exception because she "perform[ed] ministerial functions that warrant the First Amendment's protections against undue interference with the personnel decisions of churches and religious leaders"); Equal Employment Opportunity Comm'n v. Catholic Univ. of Am., 317 U.S.App. D.C. 343, 83 F.3d 455, 463 (D.C.Cir. 1996) ("[T]he ministerial exception encompasses all employees of a religious institution, whether ordained or not, whose primary functions serve its spiritual and pastoral mission."); cf. Bryce v. Episcopal Church in the Diocese of Colo., 289 F.3d 648, 658 n. 2 (10th Cir.2002) (observing that "[c]onsideration of the ministerial exception would require us to determine whether Bryce . . . was a `minister' for purposes of [the ministerial] exception," where Bryce was not ordained as a minister). In other words, a person does not have to be ordained a "minister" to be engaged in a "ministerial function."
¶ 13 The Diocese hired Mr. Fontana as director of evangelization. Evangelism by its very term means preaching the gospel. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 786 (1969). A job description statement articulated after Mr. Fontana was hired, but during his employment, states that the director job entails development and implementation of "evangelization adult formation programs in Christian discipleship, Scripture, the Catholic Faith as summarized in the Creed, Sacraments, Liturgy, Morality, Spirituality, Evangelization and Social Justice with the goal of preparing every Catholic for ministry in the Church and mission in society." CP at 200.
¶ 14 Mr. Fontana helped compile a handbook for the Deacon Formation Program and guidelines for the Parish Pastoral and Finance Councils. Mr. Fontana directed the Magnificat, an institute for preparing lay persons for ministry and missions. In Bishop Sevilla's opinion, Mr. Fontana's job was directly related to faith teaching and doctrine. And, Mr. Fontana stated in his letter to Bishop Sevilla his "commitment to minister in the church." CP at 104.
¶ 15 Given the above, we conclude Mr. Fontana's position at the Diocese was ministerial. Thus, the ministerial exception barred Mr. Fontana's claim. Therefore, the trial court properly dismissed his complaint for lack of subject matter jurisdiction.
¶ 16 Affirmed.
WE CONCUR: KULIK and KATO, JJ. Pro Tem.